# EXHIBIT

# A

# CPI CARD GROUP-MINNESOTA, INC.

## Confidentiality and Nonsolicitation Agreement

This is an Agreement between CPI Card Group-Minnesota, Inc., which is referred to as "CPI Card Group," and the employee whose signature appears below, who is referred to as "I" or "me."

### BACKGROUND

I understand that I am being employed in a position of trust and confidence and will have access to and become familiar with the methods, research, services, and procedures that CPI Card Group uses. I also understand that as part of my duties, I will learn the names of CPI Card Group's customers and suppliers and the nature of CPI Card Group's relationships with them, for example, types and amounts of products acquired from or supplied to CPI Card Group, etc.

I understand that as a condition of my employment, I must protect this information and these relationships and use them for the benefit of CPI Card Group only, not for my own or another's benefit. I understand that this Agreement is intended to protect the business that CPI Card Group and its Affiliates have built and that if I break or breach any part of this Agreement, it would seriously harm CPI Card Group's business and cause damage that would be impossible to measure.

### AGREEMENTS

I wish to be employed by CPI Card Group in a capacity in which I may receive and/or contribute to confidential information and/or work with CPI Card Group customers and suppliers and those of affiliates of CPI Card Group. In consideration of my employment with CPI Card Group, I agree as follows:

### Confidential Information

1. **Confidential Information.** "Confidential Information" means any information not generally known in CPI Card Group's business or readily ascertainable by proper means by others, including CPI Card Group competitors or the general public, and includes trade secrets. It includes, but is not limited to, the names of CPI Card Group and its Affiliates customers and suppliers and the nature of CPI Card Group's relationships with them, for example, types and amounts of products acquired from or supplied to CPI Card Group. It includes information about CPI Card Group techniques, estimate standards, inventions and printing processes. It includes information about CPI Card Group processes and products, including information relating to its research, development, manufacturing, engineering, marketing, and selling. It also includes, but is not limited to, information about sales, data processing, compensation, pricing and finances. Confidential Information includes the same or similarly defined information concerning or possessed by Affiliates of CPI Card Group. Affiliates shall mean any and all direct and indirect parent and subsidiaries of CPI Card Group-Minnesota, Inc. I acknowledge that I was formerly employed by Premier Card Solutions and that CPI Card Group purchased certain assets of Premier Card Solutions, including, among other thing, its customer lists and good will. I acknowledge and agree that as used in this Agreement, confidential information shall include the same or similarly

defined information that I learned or was exposed to while an employee of Premier Card Solutions.

2. <u>Confidentiality</u>. During and after the term of my employment,

a. I will not use, disclose, duplicate, record or in any other manner reproduce in whole or in part any Confidential Information that I learn or acquire during my employment except as ordinarily necessary for me to perform my assigned duties on behalf of CPI Card Group or unless CPI Card Group expressly directs me to do so. I will not remove Confidential Information from the location of my employment except as expressly permitted or directed by my supervisor.

b. I will treat information as confidential when it is labeled "confidential" or "trade secret." I will also treat information not expressly identified as "confidential" or "trade secret" as Confidential Information if, under the circumstances, I know or have reason to know that CPI Card Group intends to keep that type of information confidential.

c. CPI Card Group and I agree that any Confidential Information that I receive shall not be governed by this Agreement if such Confidential Information: (i) was in my lawful possession before I obtained it from CPI Card Group; (ii) is or becomes public knowledge through no act or failure to act by me; or (iii) is or becomes available to me from an unrestricted third party without a breach of confidentiality. The burden of proving i, ii, or iii shall rest upon me and shall require clear and convincing evidence.

d. I acknowledge that disclosure of any of CPI Card Group Confidential Information other than for the sole benefit of CPI Card Group would have a materially detrimental effect upon CPI Card Group, the monetary loss from which would be difficult, if not impossible, to measure.

3. <u>Return of Property</u>. If either CPI Card Group or I terminate my employment, I will immediately deliver to CPI Card Group all of CPI Card Group property, including all work in progress, research data, equipment, originals and copies of documents and software, customer lists, financial information, and all other material in my possession or control which belongs to CPI Card Group or contains Confidential Information.

4. <u>Others' Confidential Information</u>. If I possess any information that I know or should know is considered by any third party, such as a former employer of mine, to be confidential, trade secret, or otherwise proprietary, I will not disclose such information to CPI Card Group or use such information to benefit CPI Card Group in any way.

5. <u>Best Efforts</u>. During my employment with CPI Card Group, I will devote my full time and energy and best efforts to furthering CPI Card Group business. I will not pursue any other activity that would conflict with CPI Card Group business interests, without CPI Card Group written consent. I have fully and truthfully disclosed to CPI Card Group in the attached "Conflict of Interest Disclosure Statement" any and all:

a. agreements that in any way may restrict my ability to work or perform my job duties for CPI Card Group or others, including but not limited to noncompetition agreements and confidentiality agreements;

b. activities for which I may or do receive any type of compensation;

     c.    activities, including investments, that may conflict or interfere with my duties to CPI Card Group, including but not limited to any ownership interest by me or any immediate family members in any competing or related business or supplier of products or services to CPI Card Group; and

     d.    partnerships, inventions, or developments that may interfere with my duties at CPI Card Group.

6.    **Nonsolicitation of Employees.** I will not, during the term of my employment and for a period of one (1) year following the termination of my employment with CPI Card Group, regardless of the reason for or circumstances of termination, directly or indirectly solicit, on my own behalf or on behalf of another, any of CPI Card Group employees for the purpose of hiring them or inducing them to leave their employment with CPI Card Group.

7.    **Nonsolicitation of Customers.** I will not, during the term of my employment and for a period of one (1) year following the termination of my employment with CPI Card Group for whatever reason, directly or indirectly solicit, on my own behalf or on behalf of another, (a) any of CPI Card Group's then-current customers, or (b) any of CPI Card Group's potential customers for whom I had contact or provided services, either directly or indirectly. The parties agree that this Section 7 shall preclude me from soliciting such customers only for products in development, developed, manufactured or sold by CPI Card Group or Premier Card Solutions prior to the termination of my employment with CPI Card Group.

## Remedies

8.    **Remedies.** If I violate this Agreement while employed with CPI Card Group, I may be subject to discipline, up to and including immediate termination. In addition, regardless of whether I am employed with CPI Card Group, if I violate this Agreement CPI Card Group may seek injunctive relief and/or any other remedy allowed to CPI Card Group by law.

9.    **Severability.** If a court rules that any part of this Agreement is not enforceable, that part may be modified by the court to make it enforceable to the maximum extent possible. If the part cannot be so modified, that part may be severed and the other parts of the Agreement shall remain enforceable.

10.    **Nonwaiver.** CPI Card Group's action in not enforcing a breach of any part of this Agreement shall not prevent CPI Card Group from enforcing it as to any other breach of this Agreement.

11.    **Survival of Restrictions.** I agree that the restrictions contained in this Agreement shall apply to me no matter how my employment terminates and regardless of whether my termination is voluntary or involuntary. I further agree that the restrictions contained in this Agreement are reasonable and shall survive the termination of my employment.

12.    **Assignment.** The terms of this Agreement shall bind and inure to the benefit of CPI Card Group and its Affiliates, successors and assigns.

13.    **Governing Law.** This Agreement shall be construed and interpreted according to the laws of the State of Minnesota.

CPI- MN Employee Confidentiality       3
3-3-10

Acknowledgment

14. **Understandings.** I acknowledge and agree that

　　a.　CPI Card Group informed me, as part of the offer of employment and prior to my accepting employment with CPI Card Group, that a confidentiality and nonsolicitation agreement would be required as part of the terms and conditions of my employment;

　　b.　I have carefully considered the restrictions contained in this Agreement and have determined that they are reasonable;

　　c.　The restrictions in this Agreement will not unduly restrict me in securing other suitable employment in the event of my termination from CPI Card Group; and

　　d.　Nothing in this Agreement shall be construed as creating an employment contract for any specified term between CPI Card Group and me. My employment relationship with CPI Card Group is "AT-WILL", meaning that I have the right at any time to terminate my employment for any reason without prior notice and the CPI Card Group has the same right.

15. **Full Agreement.** This Agreement and the attached "Conflict of Interest Disclosure Statement" incorporates the entire understanding between the parties as to its subject matter. This Agreement may not be canceled, modified, or otherwise changed except by another written agreement signed by an authorized officer of CPI Card Group and me.

CPI CARD GROUP – MINNESOTA, INC.

Date: _____　　By: _____
　　　　　　　　　　　　　　　　　Its: _____

Date: __03/10/10__　　EMPLOYEE:
　　　　　　　　　　　Signed: _____
　　　　　　　　　　　Print Name: __JOHN P. DWYER__

CPI- MN Employee Confidentiality　　　　4
3-3-10

# EXHIBIT

# B

### AMENDMENT TO OPTION AWARD AGREEMENT AND CONFIDENTIALITY AND NONSOLICITATION AGREEMENT

This Amendment to Option Award Agreement and Confidentiality and Nonsolicitation Agreement (this "Amendment") is made effective on the 12th day of May, 2017 defined herein by and between CPI Holdings I, Inc. and CPI Card Group – Minnesota, Inc. (collectively referred to as the "Company") and John Dwyer ("Employee" or "Dwyer") (all collectively referred to as the "Parties").

WHEREAS, the CPI Holdings I, Inc. and Dwyer previously entered into an Option Award Agreement made effective as of December 7, 2011 (the "Option Award Agreement");

WHEREAS, CPI Card Group – Minnesota, Inc. and Dwyer previously entered into a Confidentiality and Nonsolicitation Agreement on March 3, 2010 ("Confidentiality and Nonsolicitation Agreement");

WHEREAS, CPI Card Group, Inc. and Dwyer previously entered into a Restricted Sock Unit Agreement on March 2, 2016 ("Restricted Stock Unit Agreement");

WHEREAS, the Parties desire to amend the Option Award Agreement, Confidentiality and Nonsolicitation Agreement, and the Restricted Stock Unit Agreement as provided in this Amendment;

AND WHEREAS, all other provisions of the Option Award Agreement, Confidentiality and Nonsolicitation Agreement, and the Restricted Stock Unit Agreement shall remain unchanged;

NOW THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties mutually agree that:

1. **NOTHING IN THIS AMENDMENT ALTERS THE "AT-WILL" NATURE OF DWYER'S EMPLOYMENT WITH THE COMPANY AND NOTHING CONTAINED HEREIN CONSTITUTES A CONTRACT OF EMPLOYMENT, EITHER EXPRESS OR IMPLIED, AND THE COMPANY DOES NOT MAKE ANY GUARANTEE OF EMPLOYMENT FOR ANY SPECIFIC DURATION.**

2. Provided the SATISFYING EVENT defined in Paragraph 3 of this Amendment is met, this Amendment shall become effective on June 17, 2017 (the "Effective Date"). In the event the SATISFYING EVENT contained in Paragraph 3 of this Amendment is not met, this Amendment shall be null and void.

3. Upon satisfaction of each of the following requirements, the SATISFYING EVENT will have been met: Dwyer will continue providing services to the Company up to and including June 16, 2017. Dwyer will physically report to work at the COMPANY up to and including May 16, 2017, after which, he will receive payment for accrued

vacation, payable on each subsequent regularly scheduled pay date, until such accrued vacation is exhausted on or about June 16, 2017. Between May 13, 2017 and June 16, 2017, inclusive, Dwyer will not be required to physically report to the Company for work on a regular basis, but will make himself available by phone, email, or in-person, on an as needed basis to assist in addressing any job-related issues incident to his employment with the Company.

4. On the Effective Date, Sections 10(b) and (c) of the Option Award Agreement shall be deleted in their entirety and replaced by the following:

(b) Non-Solicitation of Clients. The Participant acknowledge and agrees that (i) in the course of the Participant's Service the Participant shall become familiar with the trade secrets of the Company Parties and with other Confidential Information concerning the Company Parties, (ii) the Participant's services to the Company Parties are unique in nature and of an extraordinary value to the Company Parties, and (iii) the Company Parties could be irreparably damaged if the Participant were to provide similar services to any person or entity competing with any of the Company Parties or engaged in a similar business. In connection with the issuance of the Participant of the Option hereunder, and in consideration for and as an inducement to the Company to enter into this Agreement, the Participant covenants and agrees that during the period beginning on the Grant Date and ending on March 29, 2018 (the "Restricted Period"), the Participant shall not, directly or indirectly, either for himself or any other Person, solicit the following categories of clients of the Company Parties: (1) clients producing revenue for CPI Holdings, Inc. on or before March 29, 2017 that the Participant directly managed or consulted on in the areas of card fulfillment and eServices, and (2) clients producing revenue for CPI Card Group – Minnesota, Inc. on or before March 29, 2017 in the business segment of open loop prepaid retail packaging. The Participant agrees that his covenant is reasonable with respect to its duration, geographical area, and scope.

(c) Non-Solicitation of Company Party Employees. During the Restricted Period, the Participant shall not directly or indirectly (i) induce or attempt to induce to leave the Service of any of the Company Parties or hire any Employee of the Company Parties, or in any way interfere with the relationship between any of the Company Parties and any Employee thereof.

5. On the Effective Date, the following provision shall be added to the Option Award Agreement as Section 10(f):

10(f) Nondisparagement. During the Restricted Period, the Participant shall not disparage any of the Company Parties to any Customer or any employee of any of the Company Parties.

6. On the Effective Date, Section 6 of the Confidentiality and Nonsolicitation Agreement shall be deleted in its entirety and replaced by the following:

2

<u>Nonsolicitation of Employees</u>.  I will not, during the term of my employment and continuing through March 29, 2018, regardless of the reason for or circumstances of termination of my employment with CPI Card Group, directly or indirectly solicit, on my own behalf or on behalf of another, any of CPI Card Group employees for the purposes of hiring them or inducing them to leave their employment with CPI Gard Group.

7. On the Effective Date, Section 7 of the Confidentiality and Nonsolicitation Agreement shall be deleted in its entirety and replaced by the following:

<u>Nonsolicitation of Customers</u>.  I will not during the term of my employment and continuing through March 29, 2018, directly or indirectly, either for myself or any other Person, solicit the following categories of clients: (1) clients producing revenue for CPI Holdings, Inc. on or before March 29, 2017 that I directly managed or consulted on in the areas of card fulfillment and eServices, and (2) clients producing revenue for CPI Cardgroup – Minnesota, Inc. on or before March 29, 2017 in the business segment of open loop prepaid retail packaging.  I agree that his covenant is reasonable with respect to its duration, geographical area, and scope.

8. On the Effective Date, Section 6 (i) and (ii) of the Restricted Stock Unit Agreement shall be deleted in its entirety and replaced by the following:

(i) Non-Solicitation of Clients.  The Participant acknowledge and agrees that (i) in the course of the Participant's Service the Participant shall become familiar with the trade secrets of the Company Parties and with other Confidential Information concerning the Company Parties, (ii) the Participant's services to the Company Parties are unique in nature and of an extraordinary value to the Company Parties, and (iii) the Company Parties could be irreparably damaged if the Participant were to provide similar services to any person or entity competing with any of the Company Parties or engaged in a similar business.  In connection with the issuance of the Participant of the Option hereunder, and in consideration for and as an inducement to the Company to enter into this Agreement, the Participant covenants and agrees that during the period beginning on the Grant Date and ending on March 29, 2018 (the "<u>Restricted Period</u>"), the Participant shall not, directly or indirectly, either for himself or any other Person, solicit the following categories of clients of the Company Parties: (1) clients producing revenue for CPI Holdings, Inc. on or before March 29, 2017 that the Participant directly managed or consulted on in the areas of card fulfillment and eServices, and (2) clients producing revenue for CPI Card Group – Minnesota, Inc. on or before March 29, 2017 in the business segment of open loop prepaid retail packaging.  The Participant agrees that his covenant is reasonable with respect to its duration, geographical area, and scope.

3

    (ii)    <u>Nondisparagement</u>. During the Restricted Period, the Participant shall not disparage any of the Company Parties to any Customer or any employee of any of the Company Parties.

9.    The terms and conditions of all other sections of the Option Award Agreement, Confidentiality and Nonsolicitation Agreement, and the Restricted Stock Unit Agreement shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the Company has caused this Amendment to be duly executed on its behalf by an individual thereunto duly authorized and Participant has duly executed this Amendment, all as of the date and year first written above.

CPI HOLDINGS I, INC.

By: _____
Name: LISA JACOBA
Title: CHIEF HR OFFICER

CPI Card Group – Minnesota, Inc.

By: _____
Name: LISA JACOBA
Title: CHIEF HR OFFICER

PARTICIPANT:

_____ 05/12/17
John Dwyer

4

# EXHIBIT

# C



**WINSTON & STRAWN LLP**

North America  Europe  Asia

1700 K Street, NW
Washington, DC 20006
T +1 202 282 5000
F +1 202 282 5100

WILLIAM G. MIOSSI
PARTNER
(202) 282-5708
WMiossi@winston.com

July 13, 2017

**VIA: EMAIL: mr.j.dwyer@gmail.com and FEDERAL EXPRESS**

John Dwyer
5680 Newberry Avenue N
Oak Park Heights, MN 55082

Re:   **CPI Card Group Inc. – Misappropriation of Confidential Information**

Dear Mr. Dwyer:

Winston & Strawn LLP represents CPI Holdings I, Inc. and CPI Card Group Inc. ("CPI"), where you were employed as a Senior Account Executive until you resigned June 16, 2017. A recent forensic examination of your CPI email account reveals that in the days and weeks immediately preceding your resignation you forwarded to your personal email account (mr.j.dwyer@gmail.com) confidential and proprietary business information owned by CPI without authorization. In doing so, you are in breach of contractual obligations you owe to CPI Card Group, and you are violating the federal Defend Trade Secrets Act (18 U.S.C. § 1836), Minnesota Uniform Trade Secrets Act (Minn. Stat Ann. §§ 325C.01 *et seq.*), and Minnesota common law, at a minimum. I write to demand your full cooperation in returning all the proprietary and trade secret CPI materials you took without authorization and cooperate fully with our computer forensic vendor to accomplish removal and remediation of all electronic copies of CPI's materials from all your personal electronic devices, email accounts, external drives and cloud based storage sites where they may reside.

Our investigation establishes that you misappropriated a significant volume of CPI confidential information in anticipation of resigning from CPI. For example:

- On May 18, 2017, you forwarded a PowerPoint deck titled "Strategic Plan – Cards and Packaging" to your email with a subject line "Presentation 3." That PowerPoint deck contains detailed strategic information concerning CPI's future product offerings and new technologies.

- On June 1, 2017, you emailed yourself regarding subject "John Dwyer Market Opportunities" and attached an expanded version of the "Strategic Plan – Cards and Packaging" PowerPoint, which includes still more information concerning CPI's trade



John Dwyer  
July 13, 2017  
P a g e | 2

secrets and patent-pending technology (*e.g.*, heat seal, peel-out cards, the Target dual-field solution, and other even more sensitive technologies), and suggests your intention to use that nonpublic information for a future employer. In addition the PowerPoint contains a plan and schedule to call on CPI's key customers and prospects, which would be a direct violation of your nonsolicitation agreement with CPI until at least March 2018.

- Also on June 1, you sent yourself an Excel spreadsheet containing extensive information concerning MPS pricing. This information was not otherwise in CPI's possession, and we can only assume that you obtained it from MPS despite the fact that you were at the time still employed by CPI.

- On June 8, 2017, you forwarded to your personal Gmail account a PowerPoint titled, "Retail Packaging for Virtual Open Loop Card Delivery – CPI Technology." This slide deck contains detailed information on a new, proprietary CPI technology. You know from your training at CPI that this information should be treated as a CPI trade secret.

- On June 13, 2017, you forwarded a CPI email string concerning "Visa DPS Virtual Card Quote." CPI's quotes and other pricing information obviously constitute key corporate trade secrets of CPI, as you know from your training and instruction while at CPI.

- Similarly, on June 13, 2017, you forwarded yourself another email string about "US Bank/FSV User Journey" that included another discussion concerning CPI's proprietary and business-sensitive Visa DPS pricing.

Our forensic examination of your CPI email account and laptop also disclosed Uber trip receipts for travel June 7, 2017, from New York LaGuardia Airport to 845 3rd Ave, New York, NY, which is next to 885 3rd Ave, New York, NY – which is where MPS is headquartered. Your receipt for a stay June 6-7, 2017 at the Hilton Garden Inn located at 206 E 52nd St, New York, NY – two blocks from MPS headquarters – was also retrieved.

There is much more, but the foregoing should suffice for purposes of illustrating evidence of significant wrongdoing on your part. Our investigation is ongoing.

The conduct described creates multiple claims against you for violations of the Defend Trade Secrets Act, the Minnesota Uniform Trade Secrets Act, potentially violations of the federal Computer Fraud and Abuse Act, tortious interference with CPI's business expectations, conversion of CPI property, unfair competition, and breach of fiduciary duty. Remedies for violation of the DTSA and MUTSA for misappropriation, use, and disclosure of CPI's trade secret information include monetary damages, punitive damages, temporary and permanent injunctions, payment of CPI's attorneys' fees and costs incurred in any litigation, among other things. Similar remedies



John Dwyer<br>
July 13, 2017<br>
P a g e | 3

are available to CPI if it prevails on claims against you for separate and independent acts of tortious interference, conversion, unfair competition and your breach of fiduciary duty.

Additionally, the conduct described above constitutes a breach of the Amendment to Option Award Agreement and Confidentiality and Nonsolicitation Agreement dated May 12, 2017, between you and CPI ("Amendment"). The Amendment expressly preserved and incorporated all the confidentiality and nondisclosure obligations contained in the March 3, 2010 Confidentiality and Nonsolicitation Agreement whereby you agreed in Section 2 to "not use, disclose, duplicate, record or in any other manner reproduce in whole or in any part any Confidential Information that [you] learn or acquire during [your] employment except as ordinarily necessary for [you] to perform [your] assigned duties on behalf of CPI ... [You] will not remove Confidential Information from the location of [your] employment except as expressly permitted or directed by [your] supervisor." Section 3 of your March 3, 2010 Confidentiality and Nonsolicitation Agreement further obligates you to immediately deliver to CPI ... all of CPI property, including all work in progress, research data, equipment, originals and copies of documents and software, customer lists, financial information, and other materials in my possession or control which belongs to CPI Card Group or contains Confidential Information." Copies of your contracts are attached for your reference.

CPI would prefer to resolve this matter privately and quickly, rather than resort to suing you, and potentially other parties who are implicated in this matter. In order to do so, CPI demands you agree to and cooperate with the following actions to ensure the permanent removal of any misappropriated CPI information:

- Cooperate with CPI's forensic computer vendor, FTI Consulting, to permanently remove all CPI data and images from all your personal email accounts, mobile devices, cloud based storage, personal computers and external and/or hard drives in Oak Park Heights, Madeleine Island, and any other location where you do business. FTI's personnel will arrive at your home at Oak Park Heights on Wednesday, July 19, 2017, at noon Central time to pick up all such devices for forensic copying and analysis.

- Provide a written, sworn statement disclosing whether you in any manner at any time re-transmitted any CPI data from your personal email accounts or storage devices or locations to any other party or location, and if so, identity the date, the recipients, the addresses and a description of what was re-transmitted.

It is our hope that we will be able to resolve this matter quickly and without resort to litigation and/or other means. Time is of the essence and we insist on your written agreement to comply with the demands in this letter not later than close of business on Tuesday, July 18, 2017.



John Dwyer<br>
July 13, 2017<br>
P a g e | 4

Given the possibility of litigation, we place you on notice of your duty to retain, preserve and not alter or destroy Documents (defined below) that pertain to the facts, events and claims described in this correspondence. The pertinent time frame for this request is January 1, 2017 to the present and continuing.

For purposes of this Litigation Hold Notice, the term "Documents" should be construed broadly and includes physical documents and other materials and electronically-stored information (including writings, emails, excel spreadsheets, drawings, graphs, charts, photographs, voice messages, sound recordings, images, and other data or data compilations) stored in any medium from which information can be obtained or retrieved.  For the avoidance of doubt, this Notice applies to all personal email accounts that you have used during this time period, as well as USB storage devices, DVD's, cell phones or PDA's.  You should also take appropriate steps to suspend all routines or protocols for filing, modifying, deleting or recycling any and all Documents, and you should immediately ensure that any automatic deletion settings on your systems or servers or accounts are turned off.

I trust that you appreciate the seriousness of this matter.  If you, or counsel if you have counsel, have any questions, please contact me.

Very truly yours,<br><br>
*William G. Miossi*<br>
Winston & Strawn LLP

Encl.

# EXHIBIT

# D

**Raghavan, Saranya**

| | |
|---|---|
| **From:** | McDonald, Izabel <IMcDonald@KRAMERLEVIN.com> |
| **Sent:** | Tuesday, July 18, 2017 10:41 PM |
| **To:** | Miossi, Bill |
| **Cc:** | Holtzman, Robert N. |
| **Subject:** | CPI Card Group Inc./John Dwyer |

Dear Mr. Miossi,

This firm represents John Dwyer. We are in receipt of your letter to Mr. Dwyer dated July 13, 2017. We are reviewing and plan to respond to the claims in your letter. We wish to assure you that we have taken action to ensure there is no disclosure or use of CPI confidential information, to the extent Mr. Dwyer has any.

Pending our examination of CPI's allegations, please note that CPI should direct its forensic computer vendor that it should **not** come to Mr. Dwyer's home at Oak Park Heights tomorrow, July 19, at Noon. To be clear, Mr. Dwyer will not make available to CPI or its agents computers and other devices where electronic data is stored.

We'd like to propose a time to discuss this matter. Please let us know if you are free for a call on Monday, July 24 at or after 2 pm.

If you have any questions, please feel free to reach me at the number below or Robert Holtzman at (212) 715-9513.

Regards,
Izabel McDonald


**Izabel P. McDonald**
Special Counsel

**KRAMER LEVIN**
**NAFTALIS & FRANKEL LLP**
1177 Avenue of the Americas
New York, New York 10036
| O: 212-715-9160 | F: 212-715-8160
imcdonald@kramerlevin.com
view bio
www.kramerlevin.com

This communication (including any attachments) is intended solely for the recipient(s) named above and may contain information that is confidential, privileged or legally protected. Any unauthorized use or dissemination of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by return e-mail message and delete all copies of the original communication. Thank you for your cooperation.