UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **CPI Card Group, Inc., and**<br>**CPI Card Group-Minnesota, Inc.,** | File No. 17-cv-03983 (SRN/FLN) |
| Plaintiffs, | ORDER |
| v. | |
| **John Dwyer, Multi Packaging**<br>**Solutions, Inc., John Searfoss, and**<br>**Ken Glinert,** | |
| Defendants. | |

Karen D. McDaniel, James J. Long, and Lisa Colburn, Briggs & Morgan, PA, 80 South 8th Street, Ste. 2200, Minneapolis, MN 55402, for Plaintiffs.

Ryan A. Olson, Richard R. Voelbel, and Scott D. Blake, Felhaber, Larson, Fenlon & Vogt, PA, 220 South Sixth Street, Ste. 2200, Minneapolis, MN 55402, for Defendant John Dwyer.

Brian T. Benkstein, Gina K. Janeiro, and Janet M. Olawsky, Jackson Lewis P.C., 150 South Fifth Street, Ste. 3500, Minneapolis, MN 55402, for Defendants Multi Packaging Solutions, Inc., John Searfoss, and Ken Glinert.

SUSAN RICHARD NELSON, United States District Judge

  Currently before the Court is the Response to Preliminary Injunction ("the Proposed Plan") filed by Defendants Multi Packaging Solutions, Inc. ("MPS"), John Searfoss, Ken Glinert (collectively "MPS Defendants") and Defendant John Dwyer ("Dwyer") [Doc. No. 219]. The Proposed Plan was required by this Court's Order dated December 29, 2017 [Doc. No. 213 as unsealed by Doc. No. 267]. As explained below, the Court preliminarily approves Defendants' Proposed Plan in part and rejects it in part.

EXHIBIT 2

**I. BACKGROUND**

On November 7, 2017, Plaintiffs CPI Card Group, Inc. and CPI Card Group-Minnesota, Inc. (collectively "CPI") filed a Motion for a Preliminary Injunction ("CPI's Motion") [Doc. No. 143] seeking to enjoin Dwyer from working, directly or indirectly, in MPS's transaction card business during the pendency of this lawsuit. (*See* Order at 19.) This Court analyzed the four factors set forth in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc), and determined that they weighed in CPI's favor. (Order at 20–46.) The Court thus granted CPI's Motion and instructed Dwyer and the MPS Defendants to create and file with this Court a plan setting forth the steps that Defendants would undertake to ensure compliance with the preliminary injunction. (*Id.* at 53–54.)

Defendants duly complied and filed the Proposed Plan on January 12, 2018. On January 22, 2018, CPI lodged objections ("CPI's Objections") [Doc. No. 230], as permitted by the Order. With permission from this Court, (*see* Text-Only Orders [Docs. No. 237 & 244]), the MPS Defendants and Dwyer filed letter responses ("Responses") to CPI's Objections, (*see* MPS Defs.' Resp. [Doc. No. 238]; Dwyer's Resp. [Doc. No. 239]), and CPI filed a response to those Responses, (*see* CPI's Resp. [Doc. No. 245]).

**II. DISCUSSION**

CPI's Objections and Defendants' Responses fall under four somewhat overlapping categories: 1) Dwyer's contact with certain customers; 2) Dwyer's ability to sell products that merely hold, store, or display transaction cards; 3) Dwyer's use of certain marketing literature; and 4) compliance certifications.

## A. Dwyer's Contact with Certain Customers

The parties concisely set forth their positions in their filings, so the Court does not repeat them here. For the purposes of this discussion, it suffices to say that CPI objects to Dwyer being permitted to contact certain former and current CPI customers and prospects. (*See generally* CPI's Objs.) Although Defendants contend that Dwyer will now be limited to "sales and sales-related activities relating to non-transaction card products and services," such as "gift set packages, permanent displays, [and] signage," (Proposed Plan at 5), CPI contends that these activities would nevertheless violate the injunction, because some customers "provide a complete 'turn-key' solution to retailers," which consists of "transaction cards, packaging and displays." (CPI's Resp. at 1.) These solutions are thus highly integrated, and there is no clear point of separation between selling the transaction cards, and, for example, selling the "displays" used to house those cards—the solution is "bundled." (*Id.*) According to CPI, in light of this integration that commonly occurs in the industry, permitting Dwyer to have contact with certain customers would render it extremely difficult, if not practically impossible, to ensure that Dwyer has no part in Defendants' "transaction card business" as required by the injunction. (*Id.* at 1–2.) In other words, there is a very fuzzy line of demarcation, if there is one at all, separating the sale of transaction cards from the sale of displays, etc. for customers who purchase "turn-key" or bundled solutions. (*Id.*)

This Court agrees. The injunction requires Dwyer to be "walled off" from information relating to Defendants' "transaction card business," much like attorneys are walled off in firms for ethical reasons or conflicts of interest. (*See* Order at 54.) The

3

EXHIBIT 2

injunction would be rendered nearly meaningless, and its enforcement would be extremely difficult, if Dwyer were permitted to make contact with customers that purchase "turn-key" solutions that include transaction cards, even if Dwyer maintains that he is personally not selling the transaction cards themselves. The Court is hard pressed to conclude that Dwyer could remain in compliance with the injunction in such circumstances. The Court is persuaded that this slippery slope should altogether be avoided by establishing clear boundaries. In keeping with the language of the injunction, Dwyer must truly be "walled off" from Defendants' transaction card business.

This Court is persuaded that these concerns are best mitigated by prohibiting Dwyer from contacting the list of Prohibited Accounts, as that has been defined in the Declaration of Margaret O'Leary [Doc. No. 231], during the pendency of the preliminary injunction. This Court does, however, agree with Defendants that so long as Dwyer does not contact Target Financial and Retail Services ("FRS"), (*see* Dwyer Decl. [Doc. No. 241] ¶ 5), he may contact others at the larger Target Corporation in the non-transaction card business. In sum, this Court concludes that Dwyer may not engage in any fashion, directly or indirectly, with the list of Prohibited Accounts identified in the O'Leary Declaration, except that "Target" as mentioned therein shall mean only FRS, and not the larger Target Corporation.

### B. Dwyer's Ability to Sell Products That Merely Hold, Store, or Display Transaction Cards

Having carefully reviewed the parties' arguments, especially in the context of the discussion above, this Court concludes that Dwyer shall be permitted to sell products that merely hold, store, or display transaction cards, so long as the sale does not involve one of

4

EXHIBIT 2

the Prohibited Accounts and so long as that solicitation or sale is not part of a "turn-key" sale that also includes the sale of transaction cards.

### C. Dwyer's Use of WestRock's Marketing Literature

Similarly, this Court concludes that Dwyer may use WestRock's marketing literature that includes information about transaction cards, so long as he is not using it with any of the Prohibited Accounts or with sales that include the sale of transaction cards.

### D. Quarterly Certifications

This Court agrees with Defendants that quarterly certifications need not be provided directly to CPI. However, to ensure compliance with the preliminary injunction, Defendants shall file on the docket a quarterly sworn affidavit certifying compliance with the injunction and all of its terms, including, but not limited to, those contained in the final plan once that is approved by this Court. Relatedly, this Court acknowledges that CPI "reserve[d] the right to verify [Defendants'] representations through the discovery process." (*See, e.g.*, CPI's Objs. at 2–3.) Nothing in this Order shall be construed as restricting CPI from doing so.

In sum, this Court preliminarily approves Defendants' Proposed Plan, except to the extent that it is inconsistent with the restrictions detailed above.

### III. ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. **The MPS Defendants and Dwyer shall file, within ten (10) days of this Order, a second proposed plan incorporating this Order's directives. The second proposed plan shall ONLY modify the current Proposed Plan to the extent required by this Order. No other modifications will be permitted.**

2. **Within seven (7) days of Defendants' filing of the second proposed plan, CPI may file a letter with this Court, but ONLY to highlight portions of the second proposed plan that it believes are inconsistent with this Order.**

Dated: February 20, 2018                    s/Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States District Judge

6

EXHIBIT 2